UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00020-GNS-HBB

DANYEL O. MARTIN,
Administratrix of the Estate of
Edward T. Burke, IV, deceased                                    PLAINTIFF

v.

SOUTHERN HEALTH PARTNERS, INC., et al.                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 26),
Plaintiff's Motions to Exclude Expert Testimony (DN 24, 25, 28), Defendants' Motion to Exclude
Expert Testimony (DN 27), and Defendants' Motion for Leave to Seal (DN 40). The motions are
ripe for adjudication. For the reasons outlined below, Defendants' Motion for Summary Judgment
is **GRANTED IN PART**, Defendants' Motion for Leave to Seal is **GRANTED**, and the remaining
motions are **DENIED AS MOOT**.

## I.      STATEMENT OF FACTS AND CLAIMS

Plaintiff Danyel O. Martin has brought this action as administratrix of the estate of her son,
Edward Burke ("Burke"), who died while in the custody of the Warren County Regional Jail
("WCRJ") on February 1, 2016. (Compl. ¶ 1, DN 1). Defendants in this action include Southern
Health Partners, Inc. ("SHP"), who contracted with the WCRJ to provide medical care. The
remaining Defendants are Ronald Waldridge, M.D. ("Dr. Waldridge"), Barry Dorrity, APRN
("Dorrity"), Talana Lasley, LPN ("Lasley"), Lynn Gray, LPN ("Gray"), and Tasha Hafley-Crane
("Crane"), who are all employees of SHP.[1] Plaintiff has asserted a claim under 42 U.S.C. § 1983

---

[1] Plaintiff does not object to the dismissal of Defendants M. Vith, Lesa Watts, S. McClendon, and
S. McKinsler. (Pl.'s Resp. Defs.' Mot. Summ. J. 1 n.1, DN 32 [hereinafter Pl.'s Resp.]).

that Defendants were deliberately indifferent to Burke's medical needs in violation of the Eighth and Fourteenth Amendments. (Compl. ¶¶ 24-27). Plaintiff has further asserted state law claims that Defendants were negligent in their treatment of Burke. (Compl. ¶¶ 28-30).

The events giving rise to this case began on November 5, 2015, when Burke was admitted to the WCRJ following his arrest for a parole violation. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 1, at 1, DN 32-1). The medical staff at the jail conducted a screening upon admission, and Burke alerted jail medical staff that he suffered from both diabetes and Addison's disease.[2] (Defs.' Mem. Supp. Mot. Summ. J. Ex. 2, at 2, DN 26-3 [hereinafter Defs.' Mot.]). Burke was a brittle diabetic, meaning his blood sugar levels could make sudden and dramatic fluctuations on a daily and sometimes hourly basis. (Dahring Dep. 78:11-18, May 10, 2018, DN 26-4). Burke had also suffered an Addisonian crisis leading to cardiac arrest in early 2013. (Defs.' Mot. Summ. J. Ex. 4, at 3, DN 26-5).

Initially, Burke received medication for diabetes, but he did not receive prednisone to address his Addison's disease until January 8, 2016. (Defs.' Mot. Summ. J. Ex. 13, DN 26-14 [hereinafter Medication Administration Record]). Burke then continued taking prednisone daily until January 30, 2016, when he refused his dosage and signed a form documenting his refusal of the medication and waiver of liability. (Defs.' Mot. Summ. J. Ex. 17, DN 26-18).

On January 31, 2016, one day after refusing his prednisone, Burke took the medication as prescribed. (Defs.' Mot. Summ. J. Ex. 15, at 2, DN 26-16 [hereinafter Jan. 31 Progress Notes]).

---

[2] "Addison's disease is 'a chronic type of adrenocortical insufficiency, characterized by hypotension, weight loss, anorexia, weakness, and a bronzelike hyperpigmentation of the skin. It is due to tuberculosis- or autoimmune-induced destruction of the adrenal cortex, which results in deficiency of aldosterone and cortisol . . . .'" *Goldstein v. McDonald*, No. 15-1250, 2016 WL 1458490, at *1 n.1 (Vet. App. Apr. 14, 2016) (quoting Dorland's Illustrated Medical Dictionary 528 (32d ed. 2012)).

That afternoon, however, he contacted medical staff to request a check of his blood sugar and Crane was dispatched to perform the check, which showed a blood sugar level of 296.[3]  (Jan. 31 Progress Notes 2; Crane Dep. 57:24-25, July 11, 2017, DN 26-13; Defs.' Mot. Summ. J. Ex. 10, at 2, DN 26-11).  Burke requested unscheduled insulin, but after consulting with Gray, Crane informed him none would be administered.  (Crane Dep. 58:11-17).  Less than an hour later, Burke went into cardiac arrest and was transferred to The Medical Center of Bowling Green.  (Jan. 31 Progress Notes 2).  He never regained consciousness and died the following day.  (Defs.' Mot. Summ. J. Ex. 18, at 5, DN 26-19).

## II.     JURISDICTION

The Court has subject matter jurisdiction over this matter because Plaintiff's Section 1983 claim presents a federal question.  28 U.S.C. § 1331.  The Court has supplemental subject matter jurisdiction over Plaintiff's state law claims arising from the same case or controversy pursuant to 28 U.S.C. § 1367(a).

## III.     DISCUSSION

### A.     Defendant's Motion for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the non-moving party must then produce specific evidence

---

[3] Normal blood sugar ranges from 70 to 105 mg/dl.  *See Hawley v. Gelabert*, No. 1:06-CV-209, 2009 WL 2515685, at *4 (W.D. Mich. Aug. 14, 2009).

proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### 1.    *Section 1983 Claim*

### a.    **Standard**

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Professionals providing medical services to inmates at a county jail qualify as government officials acting under color of state law for Section 1983 purposes.[4] *Winkler*, 893 F.3d at 890 (citing *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)).

---

[4] Generally, the Eighth Amendment's prohibition against cruel and unusual punishment provides the basis for a claim of deliberate indifference to an inmate's medical needs. In this case, however, because Burke was a pretrial detainee, the proper starting point is the Fourteenth Amendment's Due Process Clause. *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citing *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008)).

To meet her burden on a Section 1983 claim, a plaintiff must prove two components: one objective and one subjective. *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). "For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* (internal quotation marks omitted) (citation omitted). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (internal quotation marks omitted) (citation omitted). Defendants do not dispute that Plaintiff satisfies the objective component. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) (finding diabetes requiring regular insulin injections is a serious medical condition); *see also Kruse v. Williams*, 592 F. App'x 848, 856 (11th Cir. 2014) (noting that the parties conceded that Addison's disease was a serious condition for the objective prong of a deliberate indifference claim). The Court will therefore focus its inquiry on the subjective prong of the analysis.

The subjective prong requires proof that the defendant both denied medical care and did so with the requisite culpable mental state. *Garretson*, 407 F.3d at 797. "A defendant has a sufficiently culpable state of mind if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Winkler*, 893 F.3d at 892 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component functions "to prevent the constitutionalization of medical malpractice claims . . . ." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citation omitted). Thus, "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Proof of actual knowledge on the part of the accused officials is a critical component, and "[i]f the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment." *Garretson*, 407

F.3d at 797 (citing *Watkins*, 273 F.3d at 686). Finally, a plaintiff must also prove that the deliberately indifferent conduct was the cause of their harm. *Slone v. Lincoln Cty.*, 242 F. Supp. 3d 579, 593 n.2 (E.D. Ky. 2017) (citing *Dabbs v. Bolin*, 21 F.3d 427 (6th Cir. 1994)).

### b.   Analysis

As an initial matter, Plaintiff argues this Court should not apply the deliberate indifference standard. (Pl.'s Resp. 24-25). Rather, Plaintiff claims that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), abrogates the deliberate indifference standard when applied to pretrial detainees, and that she need only prove that SHP denied Burke treatment for a serious medical need. (Pl.'s Resp. 25). The Court declines Plaintiff's invitation to apply a relaxed standard on account of Burke's status as a pretrial detainee. A recent published opinion from the Sixth Circuit unequivocally concludes that the same standard applies here as it would to an Eighth Amendment claim. *See Winkler*, 893 F.3d at 890-91. Therefore, the framework outlined above will be utilized.

The Court must now apply the deliberate indifference standard to the individually named Defendants. *Slone*, 242 F. Supp. 3d at 590 (citations omitted). Thus, the issue becomes whether each named Defendant was aware of facts from which one could draw the inference that a serious risk of harm to Burke existed, that each drew that inference, and that each disregarded the risk. *Rice v. Montgomery Cty.*, No. 5:14-181-KKC, 2016 WL 2596035, at *7 (E.D. Ky. May 5, 2016). Moreover, the risk thus perceived and ignored must have been the cause of harm to Burke. *Slone*, 242 F. Supp. 3d at 593 n.2 (citation omitted). This component is vitally important in the present context because the medical evidence of record reflects that Burke's death was caused by his refusal of prednisone on January 30, 2016, or by a coronary artery spasm. (Pfalsgraf Dep. 19:07-20:19, May 4, 2018, DN 26-15; Defs.' Expert Witness Disclosure Ex., at 1, DN 22-3 [hereinafter Miller Report]). Both physicians expressing opinions regarding the cause of Burke's death ruled

out diabetes or its sequelae as a causative factor. (Pfalsgraf Dep. 18:23-19:06, 20:16-19; Miller Report 1-2).

### i. Lasley

Lasley is the charge nurse at the Warren County Jail. (Lasley Dep. 6:20-22, Nov. 6, 2017, DN 34-7). As such, her duties include insuring staff members are complying with SHP protocols and implementing disciplinary proceedings where necessary. (Lasley Dep. 7:3-6, 9:11-16).

Applying the subjective element of the deliberate indifference standard to Lasley, Plaintiff has identified no conduct by Lasley on either January 30 or 31, 2016, that is relevant to Burke's death. Plaintiff's expert Dr. Robert Pfalsgraf ("Dr. Pfalsgraf") testified that missing his dose of prednisone on January 30 was the cause of the Addisonian crisis leading to Burke's death. (Pfalsgraf Dep. 19:07-20:12). Plaintiff makes numerous arguments concerning Lasley's ignorance of policies and procedures, but none of these is relevant without evidence that Lasley was somehow involved in the missed dose of medication which Dr. Pfalsgraf says caused Burke's death. Plaintiff has offered no proof that Lasley denied pertinent care. In fact, Burke refused the prednisone treatment on Saturday, January 30, 2016, had a heart attack the following day, and died the next day. Lasley testified she did not work weekends at the time and therefore was not present at the jail when Burke refused the medication or had the heart attack. (Lasley Dep. 34:11-15). Lasley could not have acted with the required culpability, given that there is no evidence that she worked on the weekend in question. Thus, Plaintiff has not satisfied the subjective element of the deliberate indifference standard with respect to Lasley. The constitutional claim against Lasley is therefore dismissed.

### ii.    Dorrity

Applying the subjective component of the deliberate indifference standard to Dorrity likewise results in a finding of no constitutionally deficient conduct.  At his deposition, Dorrity discussed a progress note reflecting his visit with Burke on January 7, 2016.  (Dorrity Dep. 49:1-12, Dec. 7, 2017, DN 34-4).  The note indicates that Burke informed Dorrity of his Addison's disease, stated Burke's belief that he had recently suffered an adrenal crisis, and indicated that Burke admitted he had not been taking prednisone prior to his incarceration because he lost his insurance.  (Dorrity Dep. 50:5-11).  Dorrity then prescribed Burke a daily dose of prednisone. (Dorrity Dep. 50:12-14).

When Dorrity learned Burke was not feeling well on January 7, he prescribed prednisone for Addison's disease.  Thus, it cannot be said that Dorrity ignored Burke's condition with the requisite mental culpability.  Plaintiff's argument that Dorrity's failure to follow up to ensure Burke received his prescribed dosage amounts to deliberate indifference is unpersuasive.  (Pl.'s Resp. 28).  Nothing in the record indicates Burke complained to Dorrity of any further issues related to Addison's once prednisone was initially prescribed by Dorrity.

As previously discussed, Burke's death was caused by his refusal to take prednisone on January 30.  Burke acknowledged he understood the associated risks with that choice and he signed a document purporting to release Defendants from liability.  The fact that Burke did not receive treatment for Addison's disease prior to January 7, 2016, cannot create liability because Plaintiff has not demonstrated that Burke suffered harm from the period prior to Dorrity's January 7 prescription of prednisone.  *See Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2014) ("[W]e adopt the holding in [*Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994),] that '[a]n inmate who complains that delay in medical treatment rose to a constitutional

violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" (second alteration in original) (quoting *Hill*, 40 F.3d at 1188)). To the contrary, Plaintiff's medical expert explicitly linked Burke's death to his quitting prednisone "cold turkey" by refusing the medication on January 30. (Pfalsgraf Dep. 19:7-20:12). Dorrity's conduct did not rise to the level of deliberate indifference because there has been no showing that he was aware that skipping one dose of prednisone could kill Burke. The claim against Dorrity is accordingly dismissed.

### iii.    Crane

As for Crane, Plaintiff charges that the medical technician filled out the medical refusal form on January 30, but did nothing else. (Pl.'s Resp. 15). Plaintiff fails to explain how this constitutes deliberate indifference. Burke's diabetes and Addison's disease created complicated circumstances for him and those managing his care. Plaintiff argues that though Crane was not qualified to recognize the potential for the onset of an Addisonian crisis, she had a duty to do more. (Pl.'s Resp. 20). Crane's inexperience, however, does not equate to the mental culpability required to establish deliberate indifference. Without evidence that Crane knew of the associated risk for an adrenal crisis when Burke refused to take prednisone and disregarded that risk, Plaintiff's allegations against Crane, even accepted as true, reflect at worst ordinary medical negligence— conduct far short of that which the deliberate indifference standard requires. *See Comstock*, 273 F.3d at 703; *see also Winkler*, 893 F.3d at 892. The claim of deliberate indifference against Crane is therefore dismissed.

### iv.    Gray

Plaintiff has also failed to establish that Gray was deliberately indifferent. Not only has Plaintiff failed to prove that Gray was aware of the risk to Burke associated with his refusal to take

prednisone, but Gray was not working on January 30, the day Burke refused the prednisone which Plaintiff's expert says caused his death. (Gray Dep. 78:2-15, Aug. 28, 2017, DN 34-5).

Plaintiff argues Gray ordered that Burke not receive insulin on January 31, and this constitutes deliberate indifference. (Pl.'s Resp. 28). Plaintiff has not submitted evidence, however, that withholding insulin caused Burke any harm.[5] *See Slone*, 242 F. Supp. 3d at 593. Furthermore, Plaintiff fails to state how Gray's action satisfies the subjective component of the deliberate indifference standard. Even if there was proof that Gray's refusal of a single dose of insulin had led to harm, there is nothing in the record to establish that Gray was aware of any risk of that action and disregarded it. Given the absence of such evidence, the Court will not second-guess Gray's medical judgment. *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Accordingly, Gray was not deliberately indifferent to Burke's condition, and the claim against her is dismissed.

### v.    Dr. Waldridge

Plaintiff raises a number of alarming allegations directed at Dr. Waldridge. Again, Plaintiff offers no evidence relevant to an essential element of the claim: Dr. Waldridge's actual knowledge of Burke's refusal of prednisone. In fact, Dr. Waldridge never initialed the form that Burke filled out when refusing prednisone, and Dr. Waldridge denied knowing about the skipped dose. (Waldridge Dep. 104:13-16, Jan. 19, 2018, DN 34-10). Dr. Waldridge testified that inmates routinely refuse medication for any number of reasons, and it would not be feasible to alert him every time this occurred. (Waldridge Dep. 106:3-6). Dr. Waldridge testified he had no idea what

---

[5] Plaintiff's forensic pathologist testified that Burke's death was not due to his diabetes treatment. (Pfalsgraf Dep. 33:10-34:5). Although Plaintiff suggests Defendants' causation expert somehow supports her case, Dr. Miller clearly opines that Burke died of cardiac arrest unrelated to his diabetes or Addison's disease. (Pl.'s Resp. 21; Miller Report 1-2).

Burke was thinking or how he made a medical assessment on himself leading to his refusal of the prednisone. (Waldridge Dep. 105:8-11). Without belaboring the point, the subjective component requires that a defendant accused of deliberate indifference first know of the action or condition at issue and its potential for harm. *Garretson*, 407 F.3d at 797. Plaintiff's failure to establish Dr. Waldridge's knowledge that Burke had refused treatment forecloses the conclusion that Dr. Waldridge was deliberately indifferent. The deliberate indifference claim against Dr. Waldridge is accordingly dismissed.

In her response, Plaintiff criticizes SHP's policies and alleges Dr. Waldridge did not comply with the terms of his contract. Plaintiff fails, however, to draw a connection between SHP's policies, Dr. Waldridge's contract, and Burke's refusal of his medication. Similarly, Plaintiff spends a great deal of time focused on what she views as inadequate care for Burke's diabetes during his time at the jail. None of this is relevant to the deliberate indifference claim in light of the opinion of Plaintiff's expert that "[Burke's] diabetes wasn't the cause [of death] because his test for ketones was negative." (Pfalsgraf Dep. 20:16-18). Based on this evidence, any reference to insulin or diabetes treatment is misguided.

The Sixth Circuit has disallowed deliberate indifference claims where a plaintiff fails to demonstrate that the alleged conduct resulted in a specific harm. *Napier*, 238 F.3d at 742. In *Napier*, an inmate was denied dialysis treatment for his complete kidney failure. *Id.* at 741. Napier alleged officials at the jail threatened to chain him to the wall of the drunk tank if he did not stop knocking on the cell glass in an attempt to alert someone to his medical need. *Id.* The Sixth Circuit held that because Napier did not prove harm caused by missing the treatment, his claim failed. *Id.* at 743. As in *Napier*, Plaintiff's failure here to establish a specific harm caused by the alleged deficiencies in Burke's diabetes treatment render untenable any claim that members of the jail

medical staff were deliberately indifferent with respect to Burke's death which was completely unrelated to diabetes.

### vi.    SHP

Finally, Plaintiff has asserted claims against SHP, which employed the individual Defendants.  Plaintiff argues that SHP, Dr. Waldridge, Dorrity, and Lasley are liable for their failure to supervise.  (Pl.'s Resp. 30-31).  Plaintiff contends SHP and Dr. Waldridge were primarily in the business of maximizing their profits while minimizing the level of involvement and that this resulted in a failure to execute the policies, procedures, and protocols of SHP.  (Pl.'s Resp. 30-31). Plaintiff claims Dr. Waldridge was aware of the issues surrounding his work for SHP because of other lawsuits, yet did nothing.   Lasley, Plaintiff notes, was unfamiliar with SHP's policies, procedures and protocols and could therefore not have been properly implementing them in her role as charge nurse.  (Pl.'s Resp. 31).  Plaintiff further argues that a reasonable jury could conclude that SHP's failure to train its employees demonstrates SHP's deliberate indifference to the possibility that one of its employees might violate an inmate's constitutional rights.  (Pl.'s Resp. 32-33).

Defendants respond that Plaintiff has failed to present evidence establishing that jail medical staff consciously disregarded a known serious risk.  (Defs.' Mot. 20).  Defendants note that on numerous occasions, Burke requested medical attention and medical staff then paid him a visit.  (Defs.' Mot. 20).  Defendants further contend that the medical staff worked with Burke to accommodate his requests for different doses of medication, special dietary requests, and generally attempted to work within doctor's orders.  (Defs.' Mot. 20).  Defendants further argue that the fact that Burke did not receive his prednisone one day before his death does not establish deliberate indifference on the part of SHP.  (Defs.' Mot. 21).  Rather, Defendants claim that Plaintiff can

demonstrate nothing other than oversight or mistake as opposed to conscious disregard. (Defs.'
Mot. 21).

While it is true that a private corporation providing medical care to prisoners may be liable
under Section 1983, a plaintiff must identify "some custom, policy, or procedure that caused a
violation of . . . constitutional rights." *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 989
(6th Cir. 2010) (citing *Perez v. Oakland Cty.*, 466 F.3d 416, 430 (6th Cir. 2006)). Because Plaintiff
has failed to prove a constitutional violation by any of the named individual Defendants, her claim
against SHP must likewise fail. *See Cook v. S. Health Partners*, No. 4:08CV-P128-M, 2009 WL
1409713, at *2 (W.D. Ky. May 20, 2009) ("A private corporation is not liable under § 1983 for
torts committed by its employees when such liability is predicated solely upon a theory of
respondeat superior." (internal quotation marks omitted) (quoting *Austin v. Paramount Parks,
Inc.*, 195 F.3d 715, 728 (6th Cir. 2001))). Accordingly, the Court will also grant summary
judgment on the Section 1983 claim against SHP.

### 2. *State Law Claims*

Dismissing the deliberate indifference claims against the various SHP employees removes
the sole federal question from this action. Because the remaining claims involve complex
questions of state law, the Court will decline to exercise its supplemental jurisdiction over
Plaintiff's state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966);
*Rouster v. Cty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014). Plaintiff's remaining state law
claims will therefore be dismissed without prejudice.

### B.    Motions to Exclude Expert Testimony (DN 24, 25, 27, 28)

The parties have filed dueling motions to exclude expert testimony. (Pl.'s Mot. Exclude
Expert Test., DN 24, 25, 28; Defs.' Mot. Exclude Expert Test., DN 27). Because the Court did

not rely on the testimony of the expert witnesses that the parties seek to exclude in dismissing the Section 1983 claim, the Court will deny these motions as moot.

C. **Defendants' Motion for Leave to Seal (DN 40)**

Finally, Defendants move to leave to file under seal SHP's Policies and Procedures, Guidelines, Protocols, Contracts with Dr. Waldridge, and Warren County and Warren County Addendum. Plaintiff does not oppose the motion. Accordingly, the Court will grant the motion, and the documents filed under DN 41 shall be sealed.

## IV. CONCLUSION

For the forgoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 26) is **GRANTED IN PART**. Plaintiff's claims of deliberate indifference asserted against SHP and its employees are **DISMISSED WITH PREJUDICE**. All remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff's Motions to Exclude Expert Testimony (DN 24, 25, 28) and Defendants' Motion to Exclude Expert Testimony (DN 27) are **DENIED AS MOOT**.

3. Defendants' Motion for Leave to Seal (DN 40) is **GRANTED**, and the Clerk shall file the documents under DN 41 under seal.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 11, 2019

cc: counsel of record